United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Erick J. Limmer,                                                Case No. 05-52549-R
        Debtor.                                        Chapter 7
_____/

Estate of Samantha Reid,
        Plaintiff,

v.                                                              Adv. No. 05-5527

Erick J. Limmer,
        Defendant.
_____/

<u>Opinion Regarding Plaintiff's Motion for Summary Judgment</u>

On August 1, 2005, the plaintiff filed a complaint to determine dischargeability of debt under § 523(a)(6) and for denial of the discharge due to bad faith filing. The plaintiff has filed a motion for summary judgment. The defendant filed an objection. The Court has determined that oral argument is not necessary.

I.

In 1999, Erick Limmer and three others were charged with several criminal offenses following the death of Samantha Reid and injury to Melanie Sindone as a result of GHB intoxication. Limmer was convicted of accessory after the fact to manslaughter, mixing a harmful substance in a drink, delivery of marijuana, and possession of GHB. On appeal, Limmer's conviction for accessory after the fact to manslaughter was vacated. *See People v. Holtschlag*, 2003 WL 1689985 (March 27, 2003). However, that decision was reversed by the Michigan Supreme Court and the conviction was reinstated. *See People*

*v. Holtschlag*, 471 Mich. 1, 684 N.W.2d 730 (Mich. 2004).[1] Limmer served four years in prison and was released in March, 2004.

The Estate of Samantha Reid filed a civil action against Limmer and others in Wayne County Circuit Court for wrongful death, assault, battery, sexual molestation, and intentional infliction of emotional distress. The civil action is pending.

## II.

### A.

The plaintiff contends that any debt awarded in the civil suit is the result of a willful and malicious injury and is therefore nondischargeable under 11 U.S.C. § 523(a)(6). The plaintiff asserts that Limmer brought GHB into his home knowing that it was going to be used and that he mixed GHB in certain drinks with the intent to cause harm. The plaintiff argues that because Limmer was convicted of the intentional act of mixing a harmful substance in a drink, any resulting debt from the civil case is nondischargeable.

In support of the request for denial of discharge due to bad faith filing, the plaintiff asserts that Limmer filed his bankruptcy petition for the sole purpose of avoiding a judgment in the civil suit. The plaintiff contends that Limmer has very few other debts and has very few expenses. The plaintiff argues that Limmer's expenses are largely discretionary, including a monthly cell phone bill of $225 and monthly transportation of $200.

The plaintiff also questions whether Limmer has made a full disclosure in his schedules. The plaintiff

---

1. It is extraordinary that neither party brought to this Court's attention the highly pertinent fact that Limmer's conviction had been reinstated by the Michigan Supreme Court. The Court respectfully requests that both counsel provide a complete written explanation for how that happened.

asserts that Limmer has listed no personal property, with the exception of the four items he claims exempt. The plaintiff notes that Limmer rents an apartment, but has not listed any household goods.

The plaintiff contends that these factors support a finding of bad faith and dismissal of the case for cause.

B.

Limmer contends that the complaint fails to state any facts that would support a finding that he had the actual intent to cause an injury. Limmer asserts that the only charge he was convicted of involving Samantha Reid was for accessory after the fact. However, that conviction was vacated. With respect to the bad faith filing allegation, Limmer argues that there have been no facts advanced, in the complaint, the motion or otherwise, to support this count. Further, Limmer provided an affidavit in which he states that the amounts listed on his schedules for his income and expenses are true and accurate. He further states that since his release from jail, he has been living with his parents, working in the mortgage industry and trying to rebuild his life.

III.

A.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th

3

Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party to set forth specific facts showing a triable issue." *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

B.

11 U.S.C. § 523(a)(6) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

The willful and malicious standard is a stringent one, and "debts arising from reckless or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S. Ct. 974 (1998). "[U]nless the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a willful and malicious injury as defined under § 523(a)(6)." *Kennedy v. Mustaine* (*In re Kennedy*), 249 F.3d 576, 580 (6th Cir. 2001). "From the plain language of the statute, the judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 (6th Cir. 1999); *Ingham County v. Strojny* (*In re Strojny*), 337 B.R.

150, 157 (Bankr. W.D. Mich. 2006). "Malicious" is defined as "in conscious disregard of one's duties or without just cause or excuse." *Gonzalez v. Moffitt* (*In re Moffitt*), 252 B.R. 916, 923 (B.A.P. 6th Cir. 2000); *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004); *Qui v. Zhou* (*In re Zhou*), 331 B.R. 274, 276 (Bankr. E.D. Mich. 2005).

The facts, as stated in the Michigan Court of Appeals decision, are as follows:

> On Saturday, January 16, 1999, defendants Holtschlag and Brayman picked up three young women, Samantha, Melanie, and Jessica and took them to defendant Limmer's Grosse Ile apartment to watch television and drink alcohol. Defendants Limmer and Cole were at the apartment when the girls arrived and provided each girl with a beer. Shortly thereafter, defendant Limmer gave the group a bag of marijuana and then went into his bedroom.
>
> Later in the evening, defendant Cole asked the girls if they wanted anything more to drink and then went into the kitchen with defendants Holtschlag and Brayman. Melanie testified that she saw these three defendants in the kitchen smoking marijuana and talking. When defendants left the kitchen, defendant Holtschlag gave Samantha a Mountain Dew and defendant Brayman gave Melanie a Screwdriver. Samantha complained that her drink tasted "gross." Shortly after consuming these beverages, Samantha and Melanie passed out and began vomiting. Before passing out, Melanie recalled one of the boys asking if Samantha had a pulse. Both Melanie and Samantha had to be carried into the bathroom. They were placed on their sides to prevent choking.
>
> After being apprised of the girls' conditions, defendant Limmer told the other defendants to clean up the mess made by the girls and sent defendant Holtschlag to purchase a vacuum and carpet cleaner at a nearby store. There was evidence that the girls appeared pale and that Samantha sounded like she was have [sic] trouble breathing. Jessica testified that defendant Limmer asked defendant Cole to check Samantha's pulse but that defendant Limmer would not let them call an ambulance. The two girls were sick for several hours before they were taken to the hospital. Defendant Limmer did not go with the other defendants and Jessica to the hospital. Rather, Jessica recalled that he stayed behind and repeatedly

5

warned them not to mention being at his apartment. Defendant Brayman claimed that defendant Cole informed him right before they left for the hospital that he had drugged the girls.

When Samantha and Melanie arrived at the hospital, both were unconscious and Samantha was not breathing. In response to questioning by police and hospital personnel, defendants Holtschlag, Brayman, and Cole claimed they were at a party in Ecorse and did not say anything about drugs. In fact, these defendants drove with a police officer to show him where the alleged "Ecorse party" occurred. Samantha died as a result of her injuries and Melanie was in a coma for several hours. Blood and urine samples revealed high concentrations of GHB in the girls' systems. Several experts testified that the levels of GHB present were sufficient to cause Samantha's death and the symptoms experienced by Melanie.

Defendant Cole subsequently admitted to police that he went with defendant Limmer to purchase a substance from a man outside a gas station in Dearborn. Upon returning to the apartment, defendant Cole stated that defendant Limmer poured twenty ounces of this substance into a glass container. He claimed that defendant Limmer told him that the substance would eat through a plastic container. Defendant Cole confessed to police that he literally poured this substance in all three of the girls' drinks. According to defendant Cole, defendants Brayman and Holtschlag were aware of this and acquiesced in the plan.

2003 WL 1689985, *1-2.

The opinion of the Michigan Supreme Court does not repeat an extended exposition of the facts. It does state, however, "Defendants in this case purposefully committed a malum in se unlawful act when they poured GHB into Samantha Reid's drink and, in doing so, caused her death." *People v. Holtschlag*, 471 Mich. 1, 22, 684 N.W.2d 730, 742 (2004).

The Court concludes that these facts, which cannot now be further litigated, require a finding that the defendant's actions in causing the death of Samantha Reid were willful and malicious within the meaning of 11 U.S.C. § 523(a)(6). Limmer brought the GHB to his apartment and undoubtedly knew that the plan

was to give the GHB to his female guests. After Samantha and Melanie became ill, Limmer intentionally delayed seeking medical treatment, knowing that they had ingested GHB, and would not let the other defendants call an ambulance. Instead, he instructed the other defendants to go to the store to purchase a vacuum and carpet cleaner and clean up the mess. Limmer knew that the consequences of serious illness or death were substantially certain to result from his actions of supplying the GHB and then instructing the other defendants to clean up rather than seek medical attention for Samantha Reid. Further, his actions were without just cause or excuse. Accordingly, any resulting debt is nondischargeable.

### C.

The plaintiff relies on § 707 in support of his request for denial of the discharge for bad faith. Section 707(a) permits the court to dismiss a case for cause. Lack of good faith can constitute "cause" and thus be a basis for dismissal under § 707(a). *See Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1126-27 (6th Cir. 1991).

In discussing what constitutes a "lack of good faith," the *Zick* court stated:

> Dismissal based on lack of good faith must be undertaken on an ad hoc basis. It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Id.* at 1129 (citation omitted).

Factors to be considered when making a determination of bad faith include the following:

1. The debtor reduced his creditors to a single creditor in the months prior to filing the petition.

2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle.

3. The debtor filed the case in response to a judgment, pending litigation, or collection action; there is an intent to avoid a large single debt.

4. The debtor made no effort to repay his debts.

5. The unfairness of the use of Chapter 7.

6. The debtor has sufficient resources to pay his debts.

7. The debtor is paying debts to insiders.

8. The schedules inflate expenses to disguise financial well-being.

9. The debtor transferred assets.

10. The debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors.

11. The debtor employed a deliberate and persistent pattern of evading a single major creditor.

12. The debtor failed to make a candid and full disclosure.

13. The debts are modest in relation to assets and income.

14. There are multiple bankruptcy filings or other procedural "gymnastics."

*In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995).

The existence of only one of these factors will not ordinarily support dismissal "for cause" under

§ 707(a), but the presence of a combination of factors will usually suffice. *Id.*

The plaintiff cites the following factors in support of summary judgment: 1) Limmer filed his bankruptcy petition for the sole purpose of avoiding a judgment in the civil suit; 2) Limmer has very few other debts and has very few expenses; and 3) Limmer has not made a full disclosure in his schedules.

Limmer responded that the amounts listed on his schedules are accurate.

The Court must conclude that genuine issues of material fact exist as to this count. Accordingly, the plaintiff's motion for summary judgment is granted as to § 523(a)(6) and denied as to § 707.

Not for Publication

**Entered: May 09, 2006**

                                                       /s/ Steven Rhodes
                                                      **Steven Rhodes**
                                                      **Chief Bankruptcy Judge**